**Opinion issued October 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00907-CV

————————————

**CRUM & FORSTER SPECIALTY INSURANCE COMPANY, Appellant**

**V.**

**CREEKSTONE BUILDERS, INC., NASHVILLE CREEKSTONE, LLC, STEPHEN KELLER, EVERETT JACKSON, AND CREEKSTONE SC I, LLC, Appellees**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-29616**

---

## O P I N I O N

This declaratory judgment action involves an insurance coverage dispute

arising out of a construction-defects verdict obtained in South Carolina against

appellee Creekstone SC I, LLC, an insured under commercial general liability insurance policies issued by appellant, Crum & Forster Specialty Insurance Company ("Crum & Forster"). Prior to the trial of the construction-defects lawsuit, Crum & Forster filed the underlying declaratory judgment action in Harris County against Creekstone SC I, LLC and the four additional appellees—Creekstone Builders, Inc., Nashville Creekstone, LLC, Stephen Keller, and Everett Jackson (collectively, "Creekstone")—seeking a declaration that it had no coverage obligation to Creekstone under the insurance policies at issue. Creekstone moved to dismiss the underlying action, arguing that Crum & Forster had failed to join the plaintiff from the South Carolina construction-defects lawsuit, a necessary party to this suit, and that the case would more appropriately be resolved in South Carolina and thus should be dismissed on forum non conveniens grounds. The trial court expressly granted Creekstone's motion on both grounds.

In two issues on appeal, Crum & Forster argues that (1) the trial court erroneously determined that the South Carolina plaintiff was a necessary and indispensable party to the underlying action filed in Harris County because its interests are purely derivative of Creekstone's, and (2) the trial court erred in dismissing the case on forum non conveniens grounds because Creekstone offered

2

no evidence to support its argument on that basis at the hearing on Creekstone's motion and the facts of the case support retaining this suit in Texas.

We affirm.

## Background

From 2004 to 2006, Creekstone Builders, as a developer, and Creekstone SC I, as general contractor, renovated and converted an apartment complex in Mt. Pleasant, South Carolina into condominium units.

In 2010, the East Bridge Lofts Property Owners Association, Inc. ("POA") filed suit in South Carolina state court against numerous defendants, including Creekstone SC I, Everett Jackson, and Stephen Keller,[1] and asserted several causes of action, including negligent construction and supervision of the condominium units ("the construction-defects suit"). Crum & Forster, which had issued commercial general liability insurance policies to Creekstone Builders, declined to defend Creekstone in the construction-defects suit.

On May 23, 2014, shortly before the trial in the construction-defects suit began in South Carolina, Crum & Forster filed the underlying declaratory judgment action in Harris County against Creekstone Builders, Nashville Creekstone, Keller, Jackson, and Creekstone SC I ("the underlying action"). Crum & Forster did not name the POA as a defendant. Crum & Forster alleged that it

---

[1] Appellees Everett Jackson and Stephen Keller are the president and vice president, respectively, of Creekstone Builders.

3

had issued two general liability insurance policies to Creekstone Builders in 2008 and 2009—both of which also included Creekstone SC I, Keller, and Nashville Creekstone as named insureds on the policies—and that an exclusion contained in both policies precluded coverage for the claims asserted against Creekstone in the construction-defects suit. Crum & Forster sought a declaration that, under the two insurance policies at issue, it had no duties or obligations to Creekstone for the claims asserted against it. In its original petition, Crum & Forster alleged that its "statutory home office" was located in Arizona and that its principal place of business was located in New Jersey. It also alleged that Creekstone Builders is a Texas corporation and does business in Texas, that Nashville Creekstone is a Texas company with a principal place of business in Tennessee, and that Creekstone SC I is a South Carolina company with a principal place of business in Texas.

On June 9, 2014, the South Carolina state court entered judgment in favor of the POA and against Creekstone SC I for $22,000,000 in actual damages and $33,000,000 in punitive damages.[2]

On June 24, 2014, the POA, Creekstone SC I, and Creekstone Builders filed suit against Crum & Forster in federal district court in South Carolina ("the federal action"). The POA alleged that, as a judgment creditor of Creekstone SC I, it had

---

[2] The South Carolina state court also entered judgment against Creekstone Management, LLC and East Bridge Lofts, LLC in the construction-defects suit. Neither of these entities is a party to the underlying declaratory judgment action brought by Crum & Forster.

standing to sue Crum & Forster to recover proceeds under the insurance policies at issue. Among other claims, the POA, Creekstone SC I, and Creekstone Builders sought a declaration that Crum & Forster was obligated to pay the full judgment in favor of the POA and that it was required to indemnify Creekstone SC I and Creekstone Builders.

Creekstone then filed a motion to dismiss the underlying action. Creekstone first argued that the trial court should dismiss the underlying action because Crum & Forster did not join the POA as a party. It argued that as the judgment creditor in the construction-defects suit, the POA claimed an interest that would be affected by a declaration in the underlying action and thus was a necessary and indispensable party under Texas Rule of Civil Procedure 39 and the Texas Declaratory Judgment Act.

Creekstone also argued that the federal action was pending in South Carolina, that the POA was properly joined as a party to that action, and that allowing the underlying action to proceed without the POA as a party raised the risk of inconsistent resolution of the two competing declaratory judgment actions. Creekstone further argued that the POA was a South Carolina entity that had no contacts with Texas and did not do business in Texas and therefore was not amenable to service of process in Texas. Creekstone argued that because the POA

was a necessary party that could not be joined in the underlying action, the trial court was required to dismiss the case.

As another basis for dismissal, Creekstone argued that the trial court should dismiss the underlying action pursuant to the common law doctrine of forum non conveniens because the pending federal action in South Carolina "properly includes all necessary parties and serves as the . . . only forum to fully, finally and conclusively resolve the underlying controversy, a controversy which originated in South Carolina." Creekstone argued that South Carolina is an available and adequate alternate forum, as Creekstone Builders, Creekstone SC I, Crum & Forster, and the POA are all parties to the federal action and have submitted to South Carolina's jurisdiction. Creekstone argued that retaining the case in Texas would "impose[] an undue burden on the parties as well as the Texas court system in deciding an action which cannot resolve the underlying controversy in one fell swoop." It contended that South Carolina provides an adequate remedy because it is the only forum that can fully adjudicate the issues among all affected parties; retaining the case in Texas substantially prejudices Creekstone as well as the POA; the acts or omissions that led to the claims against Creekstone in the construction defects suit occurred in South Carolina; and the federal action in South Carolina "properly include[s] all necessary and indispensable parties."

6

As supporting evidence, Creekstone attached the affidavit of Amanda Graham, the president of the POA. Graham averred that the POA is a South Carolina entity, that its only place of business is in South Carolina, that it has no contacts with Texas, and that it has never engaged in business in Texas. Graham further averred that the POA's presence is necessary because it has an interest in the damages award that is the subject of the underlying action, but because the POA cannot participate in the action, any coverage declaration "would substantially prejudice the POA because it cannot protect its interest." She averred that the dispute "turns on South Carolina witnesses" and that a declaratory judgment action concerning insurance coverage and involving the POA is pending in federal court in South Carolina. Graham stated that because South Carolina is the only state that can exercise jurisdiction over the POA, "South Carolina is the only forum [that] can fully adjudicate all issues regarding coverage for the POA judgment in a single action." Creekstone also attached as evidence a copy of the judgment in the construction-defects suit and its complaint in the federal action.

In response, Crum & Forster argued that the POA is not a necessary party to the underlying action. It argued that the POA's dispute with Creekstone has been settled by the judgment in the construction-defects suit and that in the underlying action, the interests of the POA and Creekstone are "perfectly aligned," and thus the POA's presence in the suit as a party is not necessary to protect its interest in

7

the judgment it received. Crum & Forster further argued that because the POA is in privity with Creekstone, a judgment in the underlying suit concerning insurance coverage would be res judicata to the federal action in South Carolina and would not subject the parties to the possibility of inconsistent judgments.

Crum & Forster also argued that Creekstone failed to carry its burden of proof to demonstrate entitlement to dismissal on forum non conveniens grounds, as it did not attach to its motion to dismiss any evidence addressing the factors considered in a forum non conveniens analysis. Crum & Forster attached copies of the insurance policies at issue to its response, and these policies indicated that Creekstone Builders, the named insured under the policies, has a Houston address and that Crum & Forster's broker for the policies is also located in Houston.

Creekstone filed a reply and argued that injured third parties, such as the POA, are "proper participants in declaratory actions brought by insurers to deny coverage." Creekstone further argued that it is not in privity with the POA and that any judgment in the underlying action could not be res judicata to the federal action, a suit in which the POA has been properly joined, because under the Declaratory Judgments Act, a person may not be prejudiced by a declaratory judgment action to which it was not a party.

With respect to its forum non conveniens argument, Creekstone argued that access to witnesses, discovery, and other sources of proof is easier in South

Carolina because the property damage occurred there, and the judgment in the construction-defects suit was entered there, and, thus, litigation expenses would be lower in South Carolina relative to Texas. Creekstone argued that discovery is in progress in the federal action in South Carolina, that the dispute is based on a South Carolina lawsuit, that the insurance policies at issue apply to a South Carolina entity, that the courts in Harris County are far busier than in South Carolina, and that the burden of jury duty would be more appropriately placed on the citizens of South Carolina. Creekstone again argued that South Carolina is the only forum that can "fully adjudicate the issues amongst all 'affected' parties, resolving all existing controversies with finality," and thus, "in a single South Carolina action, there would exist no possibility of inconsistent adjudications, which best serves judicial economy." Creekstone did not attach any additional evidence to its reply, nor did it present any evidence at the hearing on its motion.

The trial court expressly granted Creekstone's motion to dismiss on both of the grounds raised: that Crum & Forster failed to join a necessary and indispensable party to the action and that the doctrine of forum non conveniens permitted dismissal of the action. Crum & Forster requested findings of fact and conclusions of law, but the trial court did not file findings and conclusions. This appeal followed.

**Forum Non Conveniens**

In its second issue, Crum & Forster contends that the trial court erred in dismissing the underlying action on forum non conveniens grounds because (1) Creekstone failed to meet its burden of proof to offer evidence on the issue, and (2) the balance of private and public interest factors weighs in favor of retaining the suit in Texas.

### A. Common-Law Forum Non Conveniens Analysis

A forum non conveniens determination is "committed to the sound discretion of the trial court." *Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 266 (1981)). When the trial court has considered all of the relevant public and private interest factors and its balancing of these factors is reasonable, the court's ruling "deserves substantial deference." *Id.* An appellate court should not conduct a de novo review of the trial court's ruling by reweighing each of the factors. *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, — S.W.3d —, No. 01-13-00349-CV, 2015 WL 4591788, at *15 (Tex. App.—Houston [1st Dist.] July 30, 2015, no pet. h.).

Ordinarily, a defendant seeking dismissal based on forum non conveniens grounds "bears a heavy burden in opposing the plaintiff's chosen forum." *Quixtar*, 315 S.W.3d at 31 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,

549 U.S. 422, 430, 127 S. Ct. 1184, 1191 (2007)); *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 672 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The defendants bear the burden of proof on all elements of the forum non conveniens analysis and must establish that the balance of factors strongly favors dismissal."). However, the doctrine affords "substantially less deference" to a non-resident plaintiff's forum choice. *Quixtar*, 315 S.W.3d at 31 (quoting *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675 (Tex. 2007) (plurality op.)). Before a case is dismissed on forum non conveniens grounds, the defendant must demonstrate that an adequate alternative forum is available to adjudicate the dispute. *Richardson v. Newman*, 439 S.W.3d 538, 543 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Piper Aircraft*, 454 U.S. at 254 n.22, 102 S. Ct. at 265); *see also Brenham Oil & Gas*, 2015 WL 4591788, at *16 ("The party seeking dismissal bears the initial burden of showing that the proposed alternative forum is available and adequate.").

The "central focus" of a forum non conveniens inquiry is convenience. *Quixtar*, 315 S.W.3d at 33 (quoting *Piper Aircraft*, 454 U.S. at 249, 102 S. Ct. at 262). "The doctrine permits courts to dismiss a claim based on practical considerations that affect litigants, witnesses, and the justice system." *Brenham Oil & Gas*, 2015 WL 4591788, at *15. In determining whether to dismiss a case on forum non conveniens grounds, a court must consider the public and private

11

interest considerations set out in the United States Supreme Court's decision in *Gulf Oil Corp. v. Gilbert*. *Gulf Oil*, 330 U.S. 501, 508–09, 67 S. Ct. 839, 843 (1947) (enumerating public and private interest factors to be considered in forum non conveniens determinations); *Quixtar*, 315 S.W.3d at 33; *Brenham Oil & Gas*, 2015 WL 4591788, at *16 ("Once a court has determined that there is an adequate alternative forum that may hear the cause, it must weigh private- and public-interest factors to determine whether forum non conveniens dismissal is appropriate.").

Private interest considerations include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; (3) the possibility of a view of the premises, if such a view would be appropriate for the cause of action; (4) the enforceability of a judgment once obtained; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Quixtar*, 315 S.W.3d at 33 (quoting *Gulf Oil*, 330 U.S. at 508, 67 S. Ct. at 843). Public interest considerations include: (1) the administrative difficulties for courts when litigation occurs in "congested centers" instead of being handled "at its origin"; (2) the burden of jury duty imposed upon a community with no relation to the litigation; (3) the local interest in having

12

localized controversies decided at home; and (4) avoiding conflicts of law issues. *Id.* at 33–34 (quoting *Gulf Oil*, 330 U.S. at 508–09, 67 S. Ct. at 843).

### B. *Failure to Introduce Evidence at Hearing*

Crum & Forster first argues that we must reverse the trial court's ruling on Creekstone's motion to dismiss for forum non conveniens because Creekstone had the burden of proof but offered no supporting evidence at the hearing on its motion. Specifically, Crum & Forster argues that because a hearing on a forum non conveniens motion is an evidentiary hearing, "a trial court abuses its discretion if it dismisses a case based on forum non conveniens if the movant fails to introduce evidence at the hearing."

As support, Crum & Forster cites the Dallas Court of Appeals' decision in *Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492 (Tex. App.—Dallas 2006, no pet.). In *Seung Ok Lee*, a divorce case which involved a competing action for divorce filed in South Korea, the defendant "filed a plea in abatement in the trial court requesting the case be abated until the conclusion of the Korean suit." *Id.* at 494. The defendant offered no supporting evidence at the hearing on the plea, although the trial court took judicial notice of its file, which included a copy of the petition filed in the Korean suit. *Id.* The trial court subsequently dismissed the case on forum non conveniens grounds. *Id.* The Dallas court stated, "There must be some evidence in the record that allows the trial court to balance the [forum non

conveniens] factors and determine whether they weigh strongly in favor of trying the case in another forum," and noted that "[u]nsubstantiated, conclusory allegations in a motion or in argument by counsel are insufficient." *Id.* at 495 (citing *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.), and *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ)).

The Dallas court ultimately reversed the trial court's order dismissing the case on forum non conveniens grounds, holding that the trial court abused its discretion by dismissing the case "without sufficient evidence to balance the appropriate factors." *Id.* The court did not, however, hold that, in ruling on a forum non conveniens motion, the trial court could only consider evidence admitted at the hearing on the motion; instead, it held that there "must be *some evidence in the record*" that would allow the court to make a ruling on the forum non conveniens factors. *Id.* at 495 (emphasis added).

In making a forum non conveniens determination, the trial court is not required to consider only evidence admitted at an evidentiary hearing on the motion. *See Vinmar Trade Fin.*, 336 S.W.3d at 676 ("Regarding the adequacy of proof, a forum non conveniens movant must provide enough information to enable the trial court to balance the parties' interests."); *see also Quixtar*, 315 S.W.3d at 34 ("[R]equiring an 'extensive investigation' to produce evidence for the dismissal

14

hearing 'would defeat the purpose' of the request for this type of dismissal altogether. Obviously, there needs to be enough information 'to enable the District Court to balance the parties' interests.'") (quoting *Piper Aircraft*, 454 U.S. at 258–59, 102 S. Ct. at 267).

Instead, the trial court may consider any evidence properly before it, including evidence attached to the defendant's forum non conveniens motion. *See, e.g.*, *Vinmar*, 336 S.W.3d at 669, 674–75 (considering, when determining whether Mexico was adequate alternative forum, declaration of Mexican attorney attached as evidence to defendants' forum non conveniens motion); *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005) (stating, in special appearance context, "While we have generally encouraged oral hearings when arguments may be helpful, both the Legislature and this Court have discouraged oral presentation of testimony and evidence when they can be fairly submitted in writing. Counsel can almost always direct the trial court's attention to pertinent deposition excerpts, discovery responses, or affidavits in less time than it takes to recreate them in open court.").

Here, although Creekstone did not present any evidence at the hearing on its forum non conveniens motion, it did attach evidence to its motion, and, thus, evidence relevant to the forum non conveniens inquiry was before the trial court at the time it made its determination. We conclude that Creekstone's failure to

15

present evidence at the hearing is not automatically fatal to its ability to meet its forum non conveniens burden, and we consider the evidence present in the record when reviewing the trial court's ruling. *Cf. Benz Grp. v. Barreto*, 404 S.W.3d 92, 97 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (indicating that we must consider only evidence that was before trial court at time it made its forum non conveniens ruling).

### C. Analysis of Forum Non Conveniens Factors

Crum & Forster does not challenge the trial court's implied finding that South Carolina is an adequate and available forum to determine this dispute. *See Vinmar Trade Fin.*, 336 S.W.3d at 674 ("For a case to be dismissed for forum non conveniens, there must be another forum that could hear the case. An alternative forum exists when it is both available and adequate."); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 710 (Tex. App.—Dallas 2010, no pet.) ("If the defendant demonstrates another available forum exists, the plaintiff must then prove the available forum is inadequate."). We therefore turn to whether the trial court erred in determining that the balance of private and public interest factors weighs in favor of dismissal of the underlying action.

### 1. Private Interest Factors

As stated above, the private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for

16

attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; (3) the possibility of a view of the premises, if such a view would be appropriate for the action; (4) the enforceability of a judgment once obtained; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Quixtar*, 315 S.W.3d at 33 (quoting *Gulf Oil*, 330 U.S. at 508, 67 S. Ct. at 843). A defendant moving for dismissal on forum non conveniens grounds is not required to prove that each factor strongly favors dismissal of the case. *Id.*

Crum & Forster argues that the underlying action "involves a simple [insurance] coverage dispute with limited 'sources of proof' needed beyond the policy and the pleadings" in the underlying action. Furthermore, it contends that resolution of the underlying action requires minimal witnesses and would rely primarily on the depositions of corporate representatives, who are "either located in Texas, or, if outside Texas, in locations other than" South Carolina. Crum & Forster also argues that because a judgment obtained in Texas is equally enforceable in South Carolina, the private interest factors either weigh in favor of retaining the case in Texas or are neutral.

In arguing that the trial court's dismissal was proper, Creekstone points to the following evidence in the record: the pleadings and judgment in the construction-defects suit; court filings in both the underlying action and the federal

action; Amanda Graham's affidavit on behalf of the POA; and the insurance policies at issue. Creekstone argues:

> [T]hese documents establish access to witnesses, discovery and other sources of proof is easier in South Carolina because (a) the "occurrence" at issue arose in South Carolina; (b) the "property damage" at issue is within South Carolina; (c) the "work" at issue was performed in South Carolina; (d) Crum negotiated the "claim" at issue in South Carolina; (e) the [the construction-defects suit] against Creekstone SC[] I, LLC was "tried" in South Carolina; and (f) the "judgment" against Creekstone SC I, LLC was entered in South Carolina. Because this case stems from matters decided in South Carolina, involving South Carolina witnesses and South Carolina sources of proof, it naturally follows litigation-related expenses will be lower in South Carolina as opposed to Texas.

The parties agree that Crum & Forster, which has a home office in Arizona and a principal place of business in New Jersey, is a non-resident plaintiff and that Creekstone Builders, one of the five defendants in the underlying action, is a Texas entity. Although Crum & Forster alleged in its original petition in the underlying action that Creekstone SC I was organized under the laws of South Carolina but had a principal place of business in Texas, Creekstone alleged in the federal action, which it attached as evidence to its motion to dismiss, that Creekstone SC I "is a South Carolina limited liability company."

Ordinarily, a defendant seeking dismissal on forum non conveniens grounds "bears a heavy burden in opposing the plaintiff's chosen forum," but the doctrine affords "substantially less deference" to the forum choice of a non-resident plaintiff. *Quixtar*, 315 S.W.3d at 31; *Vinmar Trade Fin.*, 336 S.W.3d at 678.

18

"There is a connection to Texas when one of the parties is a Texas resident and at least some justification for the burden to Texans of providing judicial resources for the dispute." *Quixtar*, 315 S.W.3d at 33. Here, Creekstone Builders is a Texas entity, and Crum & Forster's broker for the insurance policies at issue was located in Texas. However, Crum & Forster itself, the plaintiff in the underlying action, is not a resident of Texas. Thus, its forum choice is entitled to "substantially less deference" than if it were a Texas resident. *See id.* Moreover, the one defendant in the underlying action that is a party to the judgment in the construction-defects suit, Creekstone SC I, is a South Carolina entity.

Creekstone attached the affidavit of Amanda Graham, the president of the POA, to its motion to dismiss. Graham averred that the condominiums that were the subject of the construction-defects suit are located in South Carolina, that the POA obtained a judgment in South Carolina against Creekstone SC I, that the "dispute turns on South Carolina witnesses," that South Carolina is the only state that can exercise jurisdiction over all parties interested in the outcome of the insurance coverage dispute, and that a suit concerning insurance coverage is also pending in South Carolina federal court and involves the POA, Creekstone SC I, Creekstone Builders, and Crum & Forster. It is clear from the record that at least some of Creekstone's sources of proof and witnesses are located in South Carolina, and Crum & Forster's employees who are witnesses for this dispute will likely be

19

required to travel regardless of whether trial is held in Texas or South Carolina, as its principal place of business is in New Jersey. Creekstone was not required to submit detailed lists of the witnesses that it plans to call or the evidence that it plans to introduce at trial, nor was it required to present to the trial court a "detailed quantification of costs" of litigating in the two respective forums. *See Quixtar*, 315 S.W.3d at 34; *Vinmar Trade Fin.*, 336 S.W.3d at 677–78 (noting that defendants "did not specifically quantify the expense of litigation in either forum" but concluding that record still provided sufficient evidence for appellate court to determine that trial court did not abuse its discretion in impliedly determining that balance of private interest factors weighed in favor of dismissal).

We conclude that the trial court had sufficient evidence before it such that it could reasonably determine that the private interest factors weighed in favor of dismissing the case to be heard in South Carolina.

### 2. Public Interest Factors

The public interest considerations include: (1) the administrative difficulties involved when litigation "pile[s] up in congested centers instead of being handled at its origin"; (2) the burden of jury duty upon the people of a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding conflicts of law issues. *Quixtar*, 315 S.W.3d at 33–34. A defendant is not required to present evidence demonstrating that each of

the public interest factors weighs in favor of dismissal. *See id.* at 35 (noting that court of appeals, in concluding that dismissal was not appropriate, "apparently reasoned that Quixtar's failure to demonstrate any choice of law issues or docket congestion problems weighed against Michigan as a more favorable forum" and ultimately holding that court of appeals "did not give the trial court's decision appropriate deference").

Crum & Forster argues that "the core issue here is an insured's right to indemnification under certain insurance policies, which were issued in Texas to Texas companies and residents," and, thus, there is "no question that Texas has the primary interest in adjudicating" this dispute. Crum & Forster is correct that Creekstone Builders is a Texas entity and that Crum & Forster's broker involved in issuing the policies is located in Houston. As a result, Texas does have an interest in adjudicating this dispute, and there is at least some justification for retaining the case in Texas. *See Quixtar*, 315 S.W.3d at 33 ("There is a connection to Texas when one of the parties is a Texas resident and at least some justification for the burden to Texas of providing judicial resources for the dispute.").

However, one of the defendants in this case, Creekstone SC I, the only defendant in the underlying action that is also a party to the judgment rendered in the construction-defects suit, is a South Carolina entity, and the insurance coverage dispute that is the focus of the underlying action arose solely because of the

21

defective condominium construction that occurred in South Carolina. Creekstone Builders, the Texas entity, is not a party to the construction-defects judgment and therefore is not liable for that judgment. Thus, although this case does involve a connection to Texas, it is more appropriately characterized as a South Carolina controversy. *See Quixtar*, 315 S.W.3d at 35 (noting that although Texas has interest in protecting citizens from Quixtar's wrongful conduct, dispute was ultimately business dispute between two Michigan corporations, key meeting took place in Michigan, and Quixtar's actions that allegedly resulted in injury occurred in Michigan); *Vinmar Trade Fin.*, 336 S.W.3d at 679–80 (noting that fraud occurred in context of Texas company's transactions in Mexico with Mexican companies and thus dispute was "more properly characterized as a Mexican controversy"). Although Texas does have an interest in this dispute, South Carolina has a greater interest and a greater relation to the litigation such that the burden of jury duty is more appropriately placed on the citizens of South Carolina as opposed to Texas.

Moreover, we note that an insurance coverage dispute is also pending in South Carolina federal court, that the POA is a party to that action, and that Crum & Forster, the defendant in that action, has not contested jurisdiction in the South Carolina federal court. Thus, the trial court's decision to dismiss the underlying

action promotes judicial economy by reducing the multiplicity of suits related to the same controversy.

We conclude that the trial court had sufficient evidence before it such that it could reasonably determine that the balance of public interest factors also weighed in favor of dismissing the underlying action. We therefore hold that Creekstone met its forum non conveniens burden and that the trial court did not abuse its discretion by dismissing the underlying action on forum non conveniens grounds.

We overrule Crum & Forster's second issue.[3]

## Conclusion

We affirm.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

---

[3] Because we hold that the trial court did not err by granting Creekstone's motion to dismiss the underlying action on forum non conveniens grounds, and we thus affirm the trial court's judgment dismissing the underlying action, we need not address Crum & Forster's first issue regarding whether the trial court erred by granting Creekstone's motion to dismiss for failure to join a necessary party.